Filed 9/22/25  In re James K. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JAMES K., a Person Coming Under Juvenile Court Law. | B341951 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>K.K.,<br><br>　　　Defendant and Appellant. | (Los Angeles County Super. Ct. No. 24CCJP03083A) |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Owen P. Martikan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

K.K. (Mother) appeals from (1) the order of the juvenile court asserting jurisdiction over her son, James K. (James), (2) the dispositional order removing James from her custody, and (3) the court's denial of her request to continue the jurisdictional and dispositional hearings. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Child Welfare History

In April 2023, child welfare authorities in Ventura County received a referral regarding James reporting that, at the time of his birth, both he and Mother had tested positive for methamphetamine, fentanyl, and methadone. Mother reported that she had been addicted to opioids beginning in approximately 2013, became and remained sober for many years thereafter, but had been "using" again since approximately 2021. Mother reported James's father, B.N. (Father), was an active drug user as well. He had "manipulated [Mother] into relapsing" in the past, including in connection with an overdose in approximately 2019. The maternal grandparents reported Mother had "been to [five] different rehabs in the past." Despite these inpatient rehabilitation efforts, Mother was reportedly "unable to maintain her sobriety for extended periods of time." Mother has a criminal record spanning many years that includes two convictions for driving under the influence (DUI) and a conviction for possession of a controlled substance.

Ventura County child welfare services deemed the referral substantiated, opened a family preservation case, and Mother "participate[d] in the court-alternative program." She was "very compliant" with services, including spending "several months" in an inpatient rehabilitation facility, during which time James

remained in her care.  She also participated in parenting classes, therapy, random drug testing, and mindfulness classes. Mother never tested positive for any drugs during the family preservation case, although she tested only infrequently after the conclusion of her inpatient treatment.  James "appear[ed] to be developing well," and her bond with James was developing appropriately.  The family preservation case closed on May 23, 2024, and Mother's plan at the time was to move in with the maternal grandmother, who lives in Texas.

A few months after the Ventura County case closed, the respondent Los Angeles County Department of Children and Family Services (DCFS) received a referral that police had stopped Mother for a traffic violation and found two methamphetamine pipes in the back seat where James was seated.  One was under the seat and one in a backpack next to James.  Mother did not appear under the influence and told authorities the pipes belonged to her ex-boyfriend, who had used the car a week earlier.  Police charged her with possession of drug paraphernalia, but DCFS deemed the referral unfounded after Mother tested negative for all illicit substances.

### B.     Referral and Petition Underlying Instant Dependency Proceedings

On September 19, 2024, maternal grandfather contacted DCFS and reported Mother was abusing methamphetamine and fentanyl.  Mother and James, then 17 months old, were living with maternal grandfather and his then-fiancée, S.S.  S.S. had found what appeared to be "crystal meth" and fentanyl in the bathroom of the home.  When S.S. confronted Mother, Mother admitted that she had used drugs that day (September 18, 2024) and that she had been using drugs since July 2024.

3

When DCFS investigated the referral, Mother told a social worker she and James had left maternal grandfather's house and were temporarily staying elsewhere. Mother intended to fly to Dallas, where maternal grandmother lived, so that Mother could enter a detox program while maternal grandmother took care of James. On September 24, 2024, however, DCFS learned Mother was still on probation and was not permitted to leave the state. The probation officer contacted Mother later that day and informed her that she would be violating the terms of her probation if she left California. Also on September 24, 2024, DCFS spoke over the phone with the maternal grandmother, who believed Mother was flying to Texas that night, and confirmed her understanding that Mother planned to go to rehab while maternal grandmother cared for James. Mother later reported having missed a flight to Texas. Soon thereafter, Mother's parole officer informed DCFS that Mother's request to travel to Texas had been denied, and that she would be arrested if she attempted to leave California.

When DCFS spoke with Mother in person on September 25, 2024, Mother admitted she had used drugs the night before, and that she "uses every day and normally either a friend will watch [James] or she will go to another room." Mother described Father as a "known criminal" who does "every drug under the sun" and stated the last time she had seen Father was three weeks prior. Mother reiterated her plan to travel to Texas but acknowledged she still did not have permission to leave the state, nor had she found a treatment facility.

DCFS filed a Welfare and Institutions Code section 300[1] petition regarding James on September 30, 2024.  The petition alleged that Mother had abused methamphetamine and fentanyl on September 25, 2024, as well as on other prior occasions when James was in her care, and that Mother's continuing abuse of methamphetamine and fentanyl rendered her incapable of providing James with regular care and supervision.

### C. Evidence Regarding Mother's Efforts To Seek Substance Abuse Treatment

DCFS reported that, on October 16, 2024, Mother informed DCFS she was in the process of checking into an inpatient substance abuse treatment center, but DCFS was unable to confirm her enrollment when it contacted the center.  Consistent with this, according to maternal grandfather, Mother had failed to appear at a scheduled intake appointment at the center on October 17, 2024.  Also on October 17, 2024, maternal grandmother told DCFS she "was trying to assist [Mother] with entering [a] detox program," but did not state Mother had found or enrolled in one.

In addition, as of the date of the jurisdictional report, Ventura County authorities had revoked Mother's probation and issued a warrant for her arrest as a result of multiple parole violations, including a DUI arrest in October 2024.

### D. Combined Jurisdictional/Dispositional Hearing

On November 6, 2024, the juvenile court held a combined hearing on jurisdiction and disposition.  At the outset of the

---

[1] All further statutory references are to the Welfare and Institutions Code.

hearing, Mother's counsel stated counsel did not know her client's whereabouts. Counsel requested a continuance, arguing that "[a]ccording to the [DCFS] report, [it was] possible [Mother] might be in an inpatient program." The court denied the continuance request.

Mother's counsel informed the court that the last direction counsel had received from Mother was to object to court jurisdiction based on Mother having been forthcoming about her relapse and attempting to arrange for maternal grandmother to care for James while Mother sought treatment.

The court sustained the petition,[2] removed James from both parents, and ordered family reunification services for both parents. Mother timely appealed.

## DISCUSSION

### A.    Continuance

Whether to continue a dependency hearing is a matter within the discretion of the court. (See *In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187 [order denying continuance reviewed for an abuse of discretion].) Mother argues the court abused this discretion in denying her counsel's oral request for a continuance.

Section 352 permits a court to continue a hearing in dependency proceedings "only upon a showing of good cause."

---

[2] The minute order incorrectly states that the court sustained three counts under section 300, subdivision (b) and two counts under section 300, subdivision (j), even though the petition only contained two counts under section 300, subdivision (b). The reporter's transcript, however, reflects that the court corrected itself, realizing it was referring to another matter, and sustained only the counts in the petition at issue.

6

(§ 352, subd. (a)(2).)  The party seeking a continuance must notice a written motion two days in advance of the hearing, "unless the court for good cause entertains an oral motion for continuance." (§ 352, subd. (a)(3).)  The sole basis for Mother's continuance request was that DCFS had reported facts suggesting she "might" be in an inpatient treatment program, even though counsel was unable to confirm this.  The court acted well within its discretion in implicitly finding that this was neither good cause for continuing the hearing, nor good cause for entertaining a last-minute oral continuance request.

Mother notes that section 352 prohibits a court from continuing a hearing on the removal of a child from parental custody for longer than 60 days after such removal (see § 352, subd. (b)), and that this period had not yet expired when Mother requested her continuance.  But this only means that section 352 would not have prohibited the court from granting Mother's continuance request, had she made the requisite showing to support it.  It is not a basis for concluding the court erred in denying a request for a continuance not supported by such a showing.

### B.    Jurisdictional Finding Regarding Mother[3]

Mother challenges the jurisdictional finding regarding her as unsupported by the evidence.  Mother correctly notes that dependency jurisdiction under section 300, subdivision (b)(1)(D) requires evidence establishing, inter alia, (1) the parent's

---

[3] The parties agree, as do we, that although Mother does not challenge all jurisdictional allegations in the petition, because she also appeals from the dispositional order deriving from the jurisdictional order, her appeal is not moot.

"substance *abuse,"* rather than mere substance use, and (2) the parent is "unable to provide regular care for a child" due to such substance abuse, resulting in the child "suffer[ing] serious physical harm or illness or [being] at significant risk of suffering serious physical harm or illness." (*In re N.R.* (2023) 15 Cal.5th 520, 556 (*N.R.*), italics added.)  We disagree with Mother that the evidence is insufficient to establish either of these elements.

For the purposes of section 300, subdivision (b)(1)(D), the term "substance abuse" carries its ordinary meaning— "the excessive use of drugs or alcohol"—and requires neither a professional medical diagnosis nor satisfaction of the prevailing criteria for a substance use disorder.  (*N.R., supra*, 15 Cal.5th at pp. 531 & 554.)  Substantial evidence supports that Mother used methamphetamines and fentanyl excessively in the months leading up to the jurisdictional hearing, and for years prior to that as well.  In September 2024, she admitted to DCFS that she was using drugs every day and "disclosed to [maternal] grandfather that she couldn't go more than [three to four] hours without using drugs."  There is also evidence that Mother has overdosed on drugs approximately three times, and that she continued to use drugs despite repeated efforts in various drug rehabilitation programs over several years.  She was arrested for driving under the influence in October 2024, and has DUI convictions from 2010 and 2019, as well as a 2019 conviction for drug possession.  The record thus contains sufficient evidence of excessive drug use and, correspondingly, "substance abuse" for the purposes of section 300.

Substantial evidence also supports that this substance abuse prevented Mother from caring for James in the manner necessary to keep him safe.  Although the California Supreme

8

Court has rejected a *presumption* that children of "tender years" are necessarily placed at risk by a parent's substance abuse, "[i]t is reasonable for courts to infer that very young children require a substantial degree of close supervision." (*N.R.*, *supra*, 15 Cal.5th at p. 558.) Mother admitted that she takes drugs—specifically methamphetamines and/or fentanyl—every day, and sometimes while James was in her sole care and merely in another room in the house. Being under the influence of these substances necessarily limits Mother's ability to provide the level of supervision a less-then-two-year-old child requires. Mother also admitted to DCFS that she was concerned about what would happen, were she to overdose—as the evidence supports she has multiple times in the past—while supervising James.

Evidence regarding the manner in which Mother cared for James after she began using drugs again in 2024 further supports that her substance abuse limited her ability to supervise him and keep him safe. For example, maternal grandfather reported he was "concerned about the times [M]other was drove [*sic*] with James while under the influence of substance [*sic*]" and that on one occasion in September 2024, maternal grandfather found Mother in the bathroom "slump[ed] over like a fentanyl zombie." Maternal grandfather further reported that Mother frequently strapped James into a chair or stroller for hours while she fixated on her nails, eyelashes, or hair. In addition, in September 2024, DCFS found 17-month-old James unattended in Mother's car in the parking lot of a Big Lots store while Mother was shopping. This evidence further supports that Mother's substance abuse limited her ability to care for James and created the requisite level of risk to justify section 300 jurisdiction.

In arguing to the contrary, Mother notes that she has been forthcoming about her drug use, and that, at the time of the jurisdictional hearing, she was earnestly pursuing drug rehabilitation. But the court could have reasonably inferred from the evidence that Mother was not, in fact, seriously pursuing substance abuse treatment. The evidence reflects that, in the approximately three months since DCFS filed the petition, Mother did not begin substance abuse treatment, was arrested for driving under the influence, was in communication with Father, whom she described as a rampant drug user, and failed to appear for an intake appointment at the center where she claimed she was seeking treatment.

Moreover, even assuming that Mother was earnestly seeking treatment, she has undertaken such rehabilitation efforts multiple times in the past yet repeatedly returned to using drugs. These efforts alone thus do not necessarily support an inference that Mother's substance abuse does not endanger James. Indeed, she relapsed shortly after the conclusion of the voluntary family maintenance services case in Ventura County, despite her service providers in that case praising her rehabilitation efforts as exemplary. Further, the court was entitled to weigh evidence of Mother's rehabilitation efforts against the other evidence in the record, outlined above, supporting the court's finding a risk of substantial harm. (See *In re T.W.* (2013) 214 Cal.App.4th 1154, 1162 [reviewing for substantial evidence, appellate court has "no power to judge the effect, value or weight of the evidence, consider the credibility of witnesses or resolve conflicts in the evidence"].)

## C. Disposition Order

Mother challenges the dispositional order to the extent it removes James from her custody. A court may only remove a child from a parent's custody when leaving the child in the home would cause a substantial danger to the child. (§ 361, subd. (c); Cal. Rules of Court, rule 5.695(d)(1).) The court must also find no reasonable means of protecting the child absent removal. (§ 361, subds. (c)(1) & (d).)

Mother challenges only the sufficiency of the evidence to support the court's finding that no reasonable means other than removal would have sufficiently neutralized the risk of harm to James if he remained in Mother's care. Specifically, she contends that neither the court nor DCFS sufficiently considered the possibility of avoiding an official removal order by arranging for maternal grandmother, who lives in Texas, to take over James's day-to-day care and supervision while Mother participated in inpatient drug rehabilitation. But the record is clear that the terms of Mother's probation prohibited her from traveling to Texas. Nothing in the record supports that the maternal grandmother was willing to come to California to retrieve James or relocate to the Los Angeles area to assist Mother with James there—let alone that maternal grandmother or Mother had started arranging for either.[4] Thus, substantial evidence supports the court's finding by clear and convincing

---

[4] Although maternal grandfather and his fiancée initially reported they thought maternal grandmother might be coming to Los Angeles to retrieve James, neither Mother nor maternal grandmother ever suggested this, but instead repeatedly suggested that Mother would be traveling to Texas.

11

evidence[5] that maternal grandmother caring for James was not an available means of avoiding removal. We thus need not analyze whether the record further supports that any of Mother's suggested alternative arrangements involving maternal grandmother would have sufficiently protected James.

---

[5] When reviewing a challenge to the sufficiency of the evidence to support a finding in a dispositional order that, like the findings section 361 requires to support removal, DCFS bore the burden of proving by clear and convincing evidence (§ 361, subd. (c)), "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011−1012.)

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


WEINGART, J.


M. KIM, J.